ROBERT MIKULA *v.* FIRST NATIONAL
SUPERMARKETS, INC., ET AL.
(AC 19640)

Foti, Zarella and Dupont, Js.

Argued September 12—officially released November 7, 2000

*Brian E. Prindle,* for the appellants (defendant Shaw's Supermarkets, Inc., et al.).

*Steven H. Cousins,* with whom, on the brief, was *Mark A. Goldsmith,* for the appellee (plaintiff).

*Nancy E. Berdon,* for the appellees (defendant Travelers Insurance Company et al.).

*Richard L. Aiken, Jr.,* with whom, on the brief, was *Kristen L. Frazier,* for the appellee (defendant Mac Risk Management, Inc., et al.).

*Opinion*

ZARELLA, J. Two of the defendants in this appeal,[1] Shaw's Supermarkets, Inc. (Shaw's), and Sedgwick James of Connecticut, the administrator of Shaw's self-insurance plan, appeal from the decision of the workers' compensation review board (board) affirming a finding by the workers' compensation commissioner (commissioner) that the plaintiff, Robert Mikula, sustained an injury arising out of and in the course of his employment with Shaw's in 1997 and is entitled to compensation for partial disability under General Statutes § 31-308 (a).[2] The defendants claim that the board improperly

---

[1] The other defendants, First National Supermarkets, Inc., Travelers Insurance Company and MAC Risk Management, Inc., request that this court affirm the decision of the workers' compensation review board. The other defendants in this appeal are Shaw's Supermarkets, Inc., and Sedgwick James of Connecticut. In this opinion, we refer to Shaw's Supermarkets, Inc., and Sedgwick James of Connecticut as the defendants.

[2] General Statutes § 31-308 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury, after such wages have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, and the amount he is able to earn after the injury, after such amount has been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, except that when (1) the physician attending an injured employee certifies that the employee is unable to perform his usual work but is able to perform other work, (2) the employee is ready and willing to perform other work in the same locality and (3) no other work is available, the employee shall be paid his full weekly compensation subject to the provisions of this section. Compensation paid under this subsection shall not be more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, and shall continue during the period of partial incapacity, but no longer than five hundred twenty weeks. If the employer procures employment for an injured employee that is suitable to his capacity, the wages offered in such employment shall be taken as the earning capacity of the injured employee during the period of the employment."

affirmed the commissioner's determination because the record does not contain (1) sufficient evidence to support the commissioner's conclusion that a compensable injury had occurred and (2) evidence of proper job searches or other evidence sufficient to support the commissioner's determination that the plaintiff is entitled to benefits. We conclude that the board properly affirmed the commissioner's findings.

In the finding and award, the commissioner found the following facts. The plaintiff commenced work as a grocery clerk for First National Supermarkets, Inc. (First National), in October, 1986. On December 20, 1988, the plaintiff injured his back while stocking shelves during the course of his employment. Eric M. Garver, an orthopedist who subsequently treated the plaintiff, assessed a 10 percent permanent partial impairment of the plaintiff's back. The plaintiff received compensation for his impairment through a voluntary agreement in 1992. In January, 1993, the plaintiff reinjured his back while stocking shelves. That injury also was compensated through a voluntary agreement. Franklin Robinson, a neurosurgeon, determined that the plaintiff had advanced degenerative disc disease and could handle light work, but would risk further injury if he lifted loads greater than fifteen to twenty pounds. On March 7, 1994, the plaintiff returned to light work, but no longer stocked shelves.

In October, 1996, the plaintiff was laid off as a result of a corporate merger between First National and Shaw's. In April, 1997, Shaw's hired the plaintiff to perform work similar to the work he had performed for First National, including stocking shelves. On May 27, 1997, the plaintiff suffered persistent pain in his back while removing merchandise from a pallet and placing it onto a dolly. He immediately notified his supervisor and went home. Although the plaintiff returned to work the following day, his pain became progressively worse.

On June 4, 1997, Garver treated the plaintiff, and prescribed physical therapy and medication. On the basis of his examination, Garver opined that the plaintiff could handle light work.

According to his testimony, the plaintiff sought light work but was unable to find any. He also applied for unemployment compensation but was denied benefits. On the basis of his medical reports, Garver found the plaintiff to be temporarily totally disabled. Aside from a $2000 advance from First National's workers' compensation carrier, Travelers Insurance Company, the plaintiff has received no benefits since May 27, 1997.

After a hearing, the commissioner determined that the plaintiff had suffered a back injury that arose out of and in the course of his employment with Shaw's. Further, the commissioner found that the plaintiff was temporarily partially disabled and unable to find light work. The commissioner, therefore, ordered the defendants to pay the plaintiff compensation for the period from May 28, 1997, to November 20, 1997, and to pay for the plaintiff's medical bills, the cost of a back brace, the cost of physical therapy and interest on unpaid compensation.

The defendants appealed to the board from the commissioner's decision. In an opinion dated May 11, 1999, the board affirmed the commissioner's decision that the plaintiff suffered an injury while working for Shaw's and that he was entitled to benefits under § 31-308 (a). This appeal followed. Additional facts will be set forth as they become relevant in the context of the defendants' claims.

I

The defendants first claim that the board improperly affirmed the commissioner's finding that the plaintiff

sustained an injury arising out of and in the course of his employment with Shaw's on May 27, 1997. We disagree.

The defendants claim that the plaintiff did not suffer any accidental injury that could be located as to time and place. The defendants argue that the plaintiff suffered only an "activation" of his prior injury when he was performing duties beyond his medical limitations. Further, the defendants analogize the facts of this case to the facts of *Dinck* v. *Gellatly Construction Co.*, 132 Conn. 479, 482–83, 45 A.2d 585 (1946), which our Supreme Court remanded for further proceedings because the record was insufficient to determine whether the plaintiff's injury was caused by the work he was performing. The commissioner in *Dinck* had determined that the plaintiff was injured when he moved a gas tank, slipped and his knee gave out. Id., 480. On appeal to the trial court, however, that court removed the finding that the plaintiff had slipped and concluded, therefore, that there was no causal connection between the injury and his employment. Id., 480–81.

Under General Statutes § 31-275 (16) (A), a claimant's injury must fall within the following definition: An "accidental injury which may be definitely located as to the time when and the place where the accident occurred, [and] an injury to an employee which is causally connected with his employment . . . ."

The defendants' reliance on *Dinck* is misplaced. Unlike the situation in that case, in which there was no causal connection between the plaintiff's injury and his employment, the subordinate facts in this case indicate that the plaintiff's injury was directly caused by his lifting merchandise from a pallet during his employment with Shaw's. On May 27, 1997, as a result of such lifting, the plaintiff felt persistent pain in his back, reported it to his supervisor and went home. Those facts were

sufficient to permit the commissioner's conclusion that the plaintiff suffered an accidental injury that was specifically located as to the time and place of its occurrence.

"[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [O]n review of the commissioner's findings, the [review board] does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached." (Internal quotation marks omitted.) *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 598–99, 630 A.2d 136 (1993), appeal dismissed, 229 Conn. 587, 642 A.2d 721 (1994). The commissioner's finding cannot be altered "unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed." (Internal quotations marks omitted.) Id., 599.

"[I]n determining whether a particular injury arose out of and in the course of employment, the [commissioner] must necessarily draw an inference from what he has found to be basic facts. . . . If supported by evidence and not inconsistent with the law, the [commissioner's] inference that an injury did or did not arise out of and in the course of employment is conclusive. . . . The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Citations omitted; internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539–40, 542 A.2d 1118 (1988).

On the basis of our review, we conclude that the board properly affirmed the commissioner's determination that the plaintiff suffered an accidental injury that was specifically located as to the time and place of its occurrence.

## II

The defendants next claim that the board improperly affirmed the commissioner's finding that the plaintiff is entitled to compensation for partial disability from May 28, 1997, through November 20, 1997, pursuant to § 31-308 (a). We disagree.

The following additional facts are necessary to the determination of this issue. According to his testimony, the plaintiff unsuccessfully sought light work employment with Shaw's. The plaintiff also sought light work elsewhere, but his search was unavailing.

We reiterate that "[t]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996). We will not disturb a finding of fact unless it is clearly erroneous. See Practice Book § 60-5.

To receive full compensation for partial disability under § 31-308 (a), a plaintiff must satisfy the following three-pronged test: "(1) the physician attending an injured employee certifies that the employee is unable to perform his usual work but is able to perform other work, (2) the employee is ready and willing to perform other work in the same locality and (3) no other work is available . . . ." General Statutes § 31-308 (a).

The defendants contend that the plaintiff failed to meet his burden of proof as to the three part test in § 31-308 (a) and further argue that he failed to show that there was no other work available.[3] As to the latter claim, the plaintiff testified that he sought employment with Shaw's as well as with other employers for light work and that he was unsuccessful in securing a job.[4] In light of those facts, we conclude that the commissioner's decision that the plaintiff was entitled to benefits pursuant to § 31-308 (a) was supported by the evidence.

The commissioner's determination was based on a correct application of the law to the facts and, therefore, the board properly upheld the commissioner's decision. We are bound, as is the board, by the facts found by the commissioner. Because the facts are supported by the evidence and are not inconsistent with the law, we will not disturb them.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[3] As to the first prong of the three-part test in § 31-308 (a), Garver, the plaintiff's attending physician, certified that the plaintiff could not perform his usual work but could perform light work. As to the second prong, the plaintiff manifested his willingness to perform other work in the locality by seeking employment with Shaw's and other employers.

[4] The following colloquy occurred:

"[Defense Counsel]: And that's, then, what you were trying to do when you contacted Shaw's, correct? You were trying to go back on light duty?

"[Plaintiff]: That's correct.

"[Defense Counsel]: And [Shaw's] for whatever reason didn't provide you with light duty?

"[Plaintiff]: That's correct.

"[Defense Counsel]: During that time period, did you look for work anywhere other than Shaw's?

"[Plaintiff]: Yes, I did."